EXHIBIT "I"

Page 1

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------X

TERESA MCCOY,

                              PLAINTIFF,

        -against-         Case No.:
                          21-CV-04907

THE TJX COMPANIES, INC.,

                          DEFENDANT.

-----------------------------------------X

                   DATE: March 1, 2022
                   TIME: 10:00 A.M


        DEPOSITION of the Defendant, THE
TJX COMPANIES, INC. By a Witness, JOE
BAGLIVIO, taken by the Plaintiff, pursuant
to the Federal Rules of Civil Procedure,
held remotely via Zoom, before Evelyn
Herrera, a Notary Public of the State of
New York.


            MAGNA LEGAL SERVICES
              (866) 624-6221
              www.MagnaLS.com



Page 2

```
 1
 2    A P P E A R A N C E S:
 3

      MICHAEL G. O'NEILL, ESQ.
 4      Attorney for the Plaintiff
        217 Broadway
 5      New York, New York 10007
 6
 7    SIMMONS JANNACE DELUCA, LLP
        Attorneys for the Defendant
 8      43 Corporate Drive
        Hauppauge, New York 11788
 9      BY: MARY C. AZZARETTO, ESQ.
10
11
12              *         *         *
13
14
15
16
17
18
19
20
21
22
23
24
25
```



Page 3

1

2      F E D E R A L   S T I P U L A T I O N S

3

4

5      IT IS HEREBY STIPULATED AND AGREED by and

6    between the counsel for the respective

7    parties herein that the sealing, filing and

8    certification of the within deposition be

9    waived; that the original of the deposition

10    may be signed and sworn to by the witness

11    before anyone authorized to administer an

12    oath, with the same effect as if signed

13    before a Judge of the Court; that an

14    unsigned copy of the deposition may be used

15    with the same force and effect as if signed

16    by the witness, 30 days after service of

17    the original & 1 copy of same upon counsel

18    for the witness.

19

20      IT IS FURTHER STIPULATED AND AGREED that

21    all objections except as to form, are

22    reserved to the time of trial.

23

24              *      *      *      *

25



Page 4

1                    [J. BAGLIVIO]

2      J O E   B A G L I V I O , called as a

3      witness, having been first duly sworn by a

4      Notary Public of the State of New York,

5      stated his address as 795 Columbus Avenue,

6      New York, New York, was examined and

7      testified as follows:

8               MS. AZZARETTO:  Before we

9          begin, I just want to reserve the

10         witness' rights to make changes to

11         the transcript, please.

12              MR. O'NEILL:  Okay, of course.

13     EXAMINATION BY

14     MR. O'NEILL:

15         Q.    The address that you gave, is

16     that your home address?

17         A.    Correct.

18         Q.    You are employed by Home Goods?

19         A.    Yes.

20         Q.    The issue with that is that

21     when this case goes to trial, if it does go

22     to trial, and if you are not employed by

23     Home Goods and I need you as a witness, I

24     won't know how to reach you.  So there is

25     two ways.  You can give your home address



Page 5

```
 1                    [J. BAGLIVIO]
 2      or if you don't want to do that, and I
 3      understand that -- in fact, I can take it
 4      off the record, if you would prefer.  The
 5      other thing you can do is, you can appoint
 6      your lawyer's law firm as your agent to
 7      accept service of a subpoena even if you
 8      are no longer employed at Home Goods.  It
 9      is up to you.
10              MS. AZZARETTO:  We will accept
11          service on his behalf in the event he
12          is employed.  In the event he is no
13          longer employed, then we'll provide
14          you with his last-known address.
15              MR. O'NEILL:  Okay, I'll take
16          that.  Good enough.
17      Q.      Mr. Baglivio, where are you
18      right now, just the city and state?
19      A.      New York, New York.
20      Q.      You are outdoors?
21      A.      Yes.
22      Q.      The background noise may become
23      an issue.  I hope not.
24      A.      I'll see what I can do, because
25      I'm actually at my job, but my Wi-Fi went
```



Page 6

```
 1                  [J. BAGLIVIO]
 2    down, which is why I ended up stepping out.
 3        Q.    Let's just keep going.  If
 4    there is an issue, then we'll deal with it.
 5    I don't think the deposition is going to
 6    take a long time, so we might as well just
 7    get through it.
 8              What is your educational
 9    background?
10        A.    High school, with a little bit
11    of college, but I never graduated.
12        Q.    What year did you graduate from
13    high school?
14        A.    '92.
15        Q.    1992?
16        A.    Yes.
17        Q.    What high school was that?
18        A.    Edward R. Morrow.
19        Q.    How long have you been employed
20    by Home Goods?
21        A.    Just short of six years now,
22    give or take, about five years -- a little
23    over five-and-a-half years.
24        Q.    Before Home Goods, where were
25    you employed?
```



Page 7

```
 1                    [J. BAGLIVIO]

 2        A.    Toys "R" Us.

 3        Q.    For how long?

 4        A.    Seventeen years.

 5        Q.    What position did you have

 6   there?

 7        A.    Assistant manager.

 8        Q.    Were you in retail before Toys

 9   "R" Us?

10        A.    Before Toys "R" Us, I was in

11   GNC, which was also a retail store.

12        Q.    Approximately how many years

13   altogether do you have in retail?

14        A.    28-some-odd years, give or

15   take.

16        Q.    When you became employed by

17   Home Goods, did you start as a manager or

18   something else?

19        A.    I started as a manager.

20        Q.    In terms of store safety or

21   customer safety, did you receive any

22   training at Home Goods with respect to

23   that?

24        A.    Yes.

25        Q.    What kind of training did you
```



Page 8

```
 1                    [J. BAGLIVIO]
 2    receive?
 3         A.    Safety standards, which is a
 4    list of policies and procedures that we do
 5    to maintain the safety of customers and
 6    associates.
 7         Q.    Does that deal with the
 8    displays?
 9         A.    It deals with merchandising,
10    yes.
11         Q.    Is that something that you keep
12    in the store?  Is that like a store manual?
13         A.    It's accessible online.
14         Q.    What does that manual cover,
15    generally, in terms of merchandising?
16         A.    Merchandise presentations, how
17    to ensure the -- how it is supposed to
18    look, how to merchandise aisles, shelves,
19    platforms.
20         Q.    That is from a safety
21    perspective?
22         A.    Yes.  So safety perspective
23    when we're talking about presentation, make
24    sure the item is on a platform, make sure
25    that items are not too heavy for the shelf
```



Page 9

```
 1                    [J. BAGLIVIO]
 2   to go on.
 3        Q.    Have you been at the Columbus
 4   Avenue store your whole time at Home Goods?
 5        A.    I just came back.  I was out --
 6   I was transferred to the Brooklyn location.
 7   I just got back in September.  I was at the
 8   Brooklyn location for approximately six
 9   months.
10        Q.    The time frame that we're
11   dealing with is July 28, 2019.  So if I
12   don't specify a different time frame,
13   that's what I'm talking about.  Did you do
14   anything to prepare for today's deposition?
15        A.    I did not.
16        Q.    Have you ever been deposed
17   before?
18        A.    Not through Home Goods.
19        Q.    At any time?
20        A.    Yes.
21        Q.    Was it in any connection with
22   your other jobs or something personal?
23        A.    My other jobs.
24        Q.    Were you on duty on July 28,
25   2019?
```



Page 10

1                    [J. BAGLIVIO]

2        A.    Yes.

3        Q.    What, generally, was your

4    schedule at that time?

5        A.    I honestly don't remember.  I'm

6    not sure if I was an opener or a closer.

7        Q.    If you were an opener, what

8    would your hours have been?

9        A.    Probably 9 to 5.  And if I was

10   a closer, 1 to close.

11       Q.    What time does the store close?

12       A.    9:00.

13       Q.    Are there any type of

14   surveillance video cameras at that

15   location?

16       A.    There is.

17       Q.    Where are they located?

18       A.    They're sporadically thrown

19   throughout the sales floor.

20       Q.    If you had a floor plan of the

21   store, would you be able to identify the

22   location of the video cameras?

23       A.    No.

24       Q.    You are familiar with an

25   incident that involved my client, Teresa



Page 11

                        [J. BAGLIVIO]

1

2   McCoy, on July 28, 2019?

3        A.    Yes.

4        Q.    What do you recall of that

5   incident?

6        A.    I recall that I was paged when

7   somebody had got -- I believe somebody got

8   hurt, something about stools to that effect

9   and I took -- because I was the one that

10   called it in to my risk management

11   department.

12        Q.    What did you do after you were

13   paged?

14        A.    I went over to speak with the

15   customer.  Found out what happened, took

16   information down.  And once I take the

17   information down, I put that over to my

18   risk management department.

19        Q.    Where was the location of the

20   incident?

21        A.    I believe it was at Department

22   33.

23        Q.    What would that be?

24        A.    That's on a sales floor, power

25   aisle, close to the entrance door, I



Page 12

1                    [J. BAGLIVIO]

2     believe.

3          Q.    I didn't catch the word before

4     aisle?

5          A.    On the sales floor.

6                MS. AZZARETTO:  I think he said

7           "power aisle."

8          A.    Power aisle.  I'm sorry.  Yes,

9     that is what we call the pathway that

10    customers walk through the store.

11         Q.    What is the word?

12         A.    Power aisle.

13         Q.    Oh, power aisle.

14         A.    Yes.

15         Q.    So I take it that is -- you

16    said that is where most customers come in

17    through the store?

18         A.    Yes.  It is like the main

19    pathway before you break up into individual

20    departments.

21         Q.    So you are likely on that aisle

22    -- every customer is likely to see what is

23    on that aisle; is that fair to say?

24         A.    Yes.

25         Q.    I take it that is an important



Page 13

1                    [J. BAGLIVIO]

2    factor in terms of merchandising?

3         A.     Yes, key area.

4         Q.     When you arrived at the area of

5    the incident, what did you see?

6         A.     I don't remember at this point.

7         Q.     Do you remember if my client

8    was on the floor, sitting, standing or

9    something else?

10        A.     I honestly don't remember.

11        Q.     Do you remember anything other

12   than the fact that you were paged, as you

13   described, and went to the area of the

14   incident and called it into risk

15   management?

16        A.     I remember speaking with the

17   customer, but that's as much as I can

18   recall at the moment.

19        Q.     Do you remember anything you

20   said or anything she said?

21        A.     I do not.

22        Q.     Were there any other store

23   employees in the area?

24        A.     I do not recall.  There was

25   another -- there were other store



Page 14

```
 1                    [J. BAGLIVIO]
 2    employees, but I don't remember who they
 3    are.  I don't even remember who paged me.
 4         Q.    Did you have a security guard
 5    in the store at that time?
 6         A.    I do not remember 100 percent.
 7    We usually have security in the building.
 8    I'm not sure if he was on break.
 9         Q.    Was security provided by Home
10    Goods employees or did you contract with an
11    agency?
12         A.    We do both.  So I don't recall
13    which one was present at the time.
14         Q.    After speaking to the customer,
15    did you do anything, that you recall?
16         A.    Simply inspected the area and
17    then I got back to risk management to
18    report the incident.
19         Q.    When you inspected the area,
20    what did you see?
21         A.    I remember seeing the stools in
22    question, but that's all I saw.
23         Q.    What, if anything, did you do
24    with respect to the stools in question?
25         A.    Originally, it was pulled off
```



Page 15

1                    [J. BAGLIVIO]

2    the sales floor and, as I normally do,

3    waiting for risk management to tell me

4    whether or not they get put back on the

5    floor.

6         Q.    Where were the stools when you

7    first took them off the floor?

8         A.    They were on the platform.

9         Q.    Were they stacked on top of

10   each other or next to each other?

11        A.    When I got there, they were

12   separated, but they were off the shelf.  It

13   wasn't in their normal position.

14        Q.    What would their normal

15   position be?

16        A.    With the legs being on the

17   floor, all four legs being on the floor.

18   If there were two stools on it, they would

19   be next to each other or opposite each

20   other.

21        Q.    I take it you are saying they

22   should not be stacked?

23        A.    Correct.

24        Q.    Do you know if they were

25   stacked when the incident happened?



Page 16

1                    [J. BAGLIVIO]

2        A.     I do not know.

3        Q.     I'm going to show you what was

4    marked at the plaintiff's deposition as

5    Exhibit B.  Are you able to see that

6    picture?

7        A.     Yes.

8        Q.     What are we looking at here?

9        A.     That is actually a display

10   table with stools on top of the table.

11       Q.     Is this the area where the

12   incident occurred?

13       A.     This is the 33 section, yes.

14   It is a feature table.

15       Q.     The stools are on their side.

16   Is that the way they should be displayed?

17       A.      If it is on the table, it can

18   be on its side because it is not on the

19   floor on a platform.  Rather, this way,

20   they can see the top of the stool as they

21   walk in.

22       Q.     I'm going to show you -- I

23   haven't marked it, but this will be marked

24   as Plaintiff's Exhibit 1 and I will send it

25   out to you, Mary.  Is this a picture that



Page 17

```
1                    [J. BAGLIVIO]
2   you took?
3        A.    It may be.
4        Q.    Do you recognize where this
5   picture was taken?
6        A.    This picture was taken -- this
7   picture, apparently, was taken in my
8   office.
9        Q.    What will be marked as
10  Plaintiff's Exhibit 2 was also in your
11  office?
12       A.    Correct.
13       Q.    I'm going to show you what I
14  will mark as Plaintiff's Exhibit 3.  This
15  is a document that is entitled TJX Accident
16  Report.  Do you recognize this document?
17       A.    Yes.
18       Q.    Is this something that you
19  filled out?
20       A.    No.  This is -- when I call
21  risk management, I speak the incident over
22  the phone.  So the risk management
23  department will then fill in the details
24  based on me verbally explaining what
25  happened.
```



1                    [J. BAGLIVIO]

2        Q.    What is the procedure for

3    calling in to risk management?

4        A.    If anybody gets hurt or there

5    is an incident in the store, it goes to

6    risk management until we file the report.

7        Q.    What I'm asking is, where is

8    risk management?  Is that an internal part

9    of Home Goods or do you know if it is an

10   outside company?

11       A.    The risk management is part of

12   Home Goods.  It is generally -- it is

13   connected to my home office, which is in

14   Boston somewhere.

15       Q.    Other than calling this in, do

16   you have any follow-up work as a general

17   course?

18       A.    No, not unless risk management

19   contacts us back asking for additional

20   information.

21       Q.    Do you know what risk

22   management does after you call in an

23   accident report?

24       A.    I do not know the entire

25   process.



Page 19

1            [J. BAGLIVIO]

2       Q.    I want to show you what will be

3  marked as Plaintiff's Exhibit 4.  This was

4  provided to me by Home Goods and I believe

5  it is a map of the store.  Is that what

6  this is?

7       A.    Yes, that is a floor plan.

8       Q.    Where would the entrance to the

9  store be?

10      A.    Okay, we're two levels and this

11 is a combination of both.

12      Q.    Do you come in on the top level

13 or does it go to the basement?

14      A.    Yes, we come in on the top

15 level.  So Department 33 is actually at the

16 door at the time.  So I'm trying -- I'm

17 sorry, I am pinching my phone trying to

18 open it up as you are moving it.

19      Q.    I'm trying to make it larger.

20 If you want me to move it up or down or

21 right or left or make it larger, just let

22 me know.

23      A.    Okay.  So move up a little bit.

24 I'm sorry, my mistake.  Move it down.  So

25 right there, those two arrows will be the



Page 20

1                    [J. BAGLIVIO]

2   entrance and exit door, the two arrows from

3   the outside.  So the right-hand side is the

4   entrance door.  So the second arrow as you

5   go straight that is pointing up, give or

6   take, is about the location of that

7   particular table where 33 is.  So 33 will

8   be that whole section on the left where the

9   two cubes are and the wall.

10       Q.    So the area where the doors are

11  is the box that has the label "vestibule"?

12       A.    Correct.

13       Q.    And there are red lines that

14  are, I guess, mark-out a section.  Are

15  those physical barriers or are those just

16  for purposes of merchandising?

17       A.    That's just for merchandising

18  purposes.  So in between the two red lines

19  that are going up the whole strip is

20  theoretically called our power aisle.

21       Q.    Which side of the power aisle

22  was the display in question with the

23  stools, right or left?

24       A.    Technically, it would be on the

25  left.  It could possibly be that first box



Page 21

1                    [J. BAGLIVIO]

2    that says "large" and "medium," it could be

3    that display table or it could be the table

4    to the left.

5         Q.    It looks like there is a yellow

6    box there that says "home" or "garden" and

7    "floral."  Does that help you at all?

8         A.    Kind of sort of temporarily

9    because my store currently doesn't have

10   that department.  Because I am in the city,

11   I don't carry that department anymore.

12        Q.    Where are the check-out

13   registers?

14        A.    Would be towards the right.

15   There is two sets.  So the ones upstairs

16   are towards the right, to the right of

17   those two arrows that are going down.

18        Q.    Okay.

19        A.    So that would be four

20   registers.

21        Q.    So they're labeled 1, 2, 3, 4;

22   is that correct?

23        A.    Yes.

24        Q.    How many registers do you

25   typically have open during the middle of



Page 22

1                    [J. BAGLIVIO]
2    the day?
3         A.    Middle of the day will probably
4    be three to four.
5         Q.    Do you use particular registers
6    or is it random or depends on who is on the
7    register or something else?  In other
8    words, how do you decide which registers to
9    use?
10        A.    Register 2 and register 3 and
11   register 4 would be the high-traffic
12   registers.  And register 4 would be the
13   last register to open.
14        Q.    Do your store employees receive
15   any training with respect to safety?
16        A.    The same training that I myself
17   go through.
18        Q.    Are employees instructed if
19   they see some type of display or anything
20   that might pose a hazard, are they supposed
21   to do anything?
22        A.    They're supposed to address it
23   immediately.
24        Q.    How would they address it?
25        A.    Whether it is fixing it or



1                    [J. BAGLIVIO]

2    picking it off the floor, depending on what

3    the situation is.

4        Q.    Is there anybody in the store

5    who has the primary responsibility for

6    safety?

7        A.    No.

8        Q.    What about for maintenance?

9        A.    There is a specific person for

10   maintenance that will generally keep the

11   store clean.

12       Q.    Is that employee a porter or

13   does he have a different title?

14       A.    We call them maintenance

15   associates employed by Home Goods.

16       Q.    What does that person do during

17   his shift?

18       A.    During the shift, he generally

19   sweeps, spot mops, you know, clean the rest

20   rooms.

21       Q.    Is that on both shifts that you

22   have a maintenance person?

23       A.    Maintenance person is generally

24   a morning shift.  Sometimes early afternoon

25   shifts.



Page 24

```
 1                    [J. BAGLIVIO]

 2        Q.     There is an overlap between the

 3   morning and afternoon shift; correct?

 4        A.     If there are two schedules,

 5   yes.

 6        Q.     I mean just in general, the

 7   morning shift ends at 5, the closing shift

 8   begins at 1?

 9        A.     Yes.  So we would have

10   mid-shifts and people that carry over.

11        Q.     Do you have part-time or

12   full-time employees or both?

13        A.     We have both.

14        Q.     Would you have any record of

15   the employees that were in the store on

16   July 28, 2019?

17        A.     I do not know.  Our files are

18   purged after X amount of time.  So I am not

19   sure if we'll have access to that.

20        Q.     Which files are you referring

21   to?

22        A.     Like schedules, old schedules.

23        Q.     Do you keep any type of

24   personnel file in your store?

25        A.     Personnel file, yes, those we
```



Page 25

```
 1                    [J. BAGLIVIO]
 2   do.
 3        Q.    Do you retain those for, I
 4   would suspect, at least seven years;
 5   correct?
 6        A.    Yes.
 7        Q.    Is there anything else about
 8   the incident that you recall that I haven't
 9   asked you about?
10        A.    No.
11        Q.    Did you have any further
12   conversations with my client, other than
13   the one that you had at the time of the
14   incident?
15        A.    I did not.
16        Q.    Have you seen her come back to
17   the store since then?
18        A.    I honestly would not know.
19             MR. O'NEILL:  Okay,
20          Mr. Baglivio, I don't have any
21          further questions for you.  I
22          appreciate your time.
23             MS. AZZARETTO:  Thank you.
24             (Whereupon, at 10:30 A.M., the
25          Examination of this witness was
```



Page 26

1

2      concluded.)

3

4             °              °           °            °

5

6            D E C L A R A T I O N

7

8      I hereby certify that having been

9   first duly sworn to testify to the truth, I

10  gave the above testimony.

11

12      I FURTHER CERTIFY that the foregoing

13  transcript is a true and correct transcript

14  of the testimony given by me at the time

15  and place specified hereinbefore.

16

17

                 _____

18                     JOHN BAGLIVIO

19

20  Subscribed and sworn to before me

21  this _____ day of _____ 20___.

22

23

    _____

24      NOTARY PUBLIC

25



Page 27

```
 1
 2                E X H I B I T S
 3
 4    PLAINTIFF EXHIBITS (DEEMED MARKED)
 5
 6    EXHIBIT    EXHIBIT
 7    NUMBER     DESCRIPTION
 8    1          PHOTOGRAPH
 9    2          PHOTOGRAPH
10    3          TJX ACCIDENT REPORT
11    4          MAP OF STORE
12
13         (Exhibits retained by Counsel.)
14
15                I N D E X
16
17    EXAMINATION BY                    PAGE
18    MR. O'NEILL                       6
19
20      INFORMATION AND/OR DOCUMENTS REQUESTED
21    INFORMATION AND/OR DOCUMENTS      PAGE
22    (None)
23
24
25
```



Page 28

1
2                    C E R T I F I C A T E
3
4    STATE OF NEW YORK        )
                              :  SS.:
5    COUNTY OF DUTCHESS       )
6
7         I, EVELYN HERRERA, a Notary Public
8    for and within the State of New York, do
9    hereby certify:
10        That the witness whose examination is
11   hereinbefore set forth was duly sworn and
12   that such examination is a true record of
13   the testimony given by that witness.
14        I further certify that I am not
15   related to any of the parties to this
16   action by blood or by marriage and that I
17   am in no way interested in the outcome of
18   this matter.
19        IN WITNESS WHEREOF, I have hereunto
20   set my hand this 7th day of March 2022.
21
22
23   _____
                EVELYN HERRERA
24
25



| A |
| --- |
| **able** 10:21 16:5 |
| **accept** 5:7,10 |
| **access** 24:19 |
| **accessible** 8:13 |
| **accident** 17:15 18:23 27:10 |
| **action** 28:16 |
| **additional** 18:19 |
| **address** 4:5,15,16,25 5:14 22:22,24 |
| **administer** 3:11 |
| **afternoon** 23:24 24:3 |
| **agency** 14:11 |
| **agent** 5:6 |
| **AGREED** 3:5,20 |
| **aisle** 11:25 12:4,7,8,12,13 12:21,23 20:20,21 |
| **aisles** 8:18 |
| **altogether** 7:13 |
| **amount** 24:18 |
| **AND/OR** 27:20,21 |
| **anybody** 18:4 23:4 |
| **anymore** 21:11 |
| **apparently** 17:7 |
| **appoint** 5:5 |
| **appreciate** 25:22 |
| **approximately** 7:12 9:8 |
| **area** 13:3,4,13,23 14:16 14:19 16:11 20:10 |
| **arrived** 13:4 |
| **arrow** 20:4 |
| **arrows** 19:25 20:2 21:17 |
| **asked** 25:9 |
| **asking** 18:7,19 |
| **Assistant** 7:7 |
| **associates** 8:6 23:15 |
| **Attorney** 2:4 |
| **Attorneys** 2:7 |
| **authorized** 3:11 |
| **Avenue** 4:5 9:4 |
| **AZZARETTO** 2:9 4:8 5:10 12:6 25:23 |
| **A.M** 1:12 25:24 |

| B |
| --- |

| B |
| --- |
| **B** 4:2 16:5 27:2 |
| **back** 9:5,7 14:17 15:4 18:19 25:16 |
| **background** 5:22 6:9 |
| **Baglivio** 1:17 4:1 5:1,17 6:1 7:1 8:1 9:1 10:1 11:1 12:1 13:1 14:1 15:1 16:1 17:1 18:1 19:1 20:1 21:1 22:1 23:1 24:1 25:1,20 26:18 |
| **barriers** 20:15 |
| **based** 17:24 |
| **basement** 19:13 |
| **begins** 24:8 |
| **behalf** 5:11 |
| **believe** 11:7,21 12:2 19:4 |
| **bit** 6:10 19:23 |
| **blood** 28:16 |
| **Boston** 18:14 |
| **box** 20:11,25 21:6 |
| **break** 12:19 14:8 |
| **Broadway** 2:4 |
| **Brooklyn** 9:6,8 |
| **building** 14:7 |

| C |
| --- |
| **C** 2:2,9 26:6 28:2,2 |
| **call** 12:9 17:20 18:22 23:14 |
| **called** 4:2 11:10 13:14 20:20 |
| **calling** 18:3,15 |
| **cameras** 10:14,22 |
| **carry** 21:11 24:10 |
| **case** 1:6 4:21 |
| **catch** 12:3 |
| **certification** 3:8 |
| **certify** 26:8,12 28:9,14 |
| **changes** 4:10 |
| **check-out** 21:12 |
| **city** 5:18 21:10 |
| **Civil** 1:18 |
| **clean** 23:11,19 |
| **client** 10:25 13:7 25:12 |
| **close** 10:10,11 11:25 |
| **closer** 10:6,10 |

| closing 24:7 |
| --- |
| **college** 6:11 |
| **Columbus** 4:5 9:3 |
| **combination** 19:11 |
| **come** 12:16 19:12,14 25:16 |
| **COMPANIES** 1:8,16 |
| **company** 18:10 |
| **concluded** 26:2 |
| **connected** 18:13 |
| **connection** 9:21 |
| **contacts** 18:19 |
| **contract** 14:10 |
| **conversations** 25:12 |
| **copy** 3:14,17 |
| **Corporate** 2:8 |
| **correct** 4:17 15:23 17:12 20:12 21:22 24:3 25:5 26:13 |
| **counsel** 3:6,17 27:13 |
| **COUNTY** 28:5 |
| **course** 4:12 18:17 |
| **Court** 1:2 3:13 |
| **cover** 8:14 |
| **cubes** 20:9 |
| **currently** 21:9 |
| **customer** 7:21 11:15 12:22 13:17 14:14 |
| **customers** 8:5 12:10,16 |

| D |
| --- |
| **D** 3:2 26:6 27:15 |
| **DATE** 1:11 |
| **day** 22:2,3 26:21 28:20 |
| **days** 3:16 |
| **deal** 6:4 8:7 |
| **dealing** 9:11 |
| **deals** 8:9 |
| **decide** 22:8 |
| **DEEMED** 27:4 |
| **Defendant** 1:9,15 2:7 |
| **DELUCA** 2:7 |
| **department** 11:11,18,21 17:23 19:15 21:10,11 |
| **departments** 12:20 |
| **depending** 23:2 |

| depends 22:6 |
| --- |
| **deposed** 9:16 |
| **deposition** 1:15 3:8,9,14 6:5 9:14 16:4 |
| **described** 13:13 |
| **DESCRIPTION** 27:7 |
| **details** 17:23 |
| **different** 9:12 23:13 |
| **display** 16:9 20:22 21:3 22:19 |
| **displayed** 16:16 |
| **displays** 8:8 |
| **DISTRICT** 1:2,2 |
| **document** 17:15,16 |
| **DOCUMENTS** 27:20,21 |
| **door** 11:25 19:16 20:2,4 |
| **doors** 20:10 |
| **Drive** 2:8 |
| **duly** 4:3 26:9 28:11 |
| **DUTCHESS** 28:5 |
| **duty** 9:24 |

| E |
| --- |
| **E** 2:2,2 3:2,2 4:2 26:6 27:2,15 28:2,2 |
| **early** 23:24 |
| **educational** 6:8 |
| **Edward** 6:18 |
| **effect** 3:12,15 11:8 |
| **employed** 4:18,22 5:8,12 5:13 6:19,25 7:16 23:15 |
| **employee** 23:12 |
| **employees** 13:23 14:2,10 22:14,18 24:12,15 |
| **ended** 6:2 |
| **ends** 24:7 |
| **ensure** 8:17 |
| **entire** 18:24 |
| **entitled** 17:15 |
| **entrance** 11:25 19:8 20:2 20:4 |
| **ESQ** 2:3,9 |
| **Evelyn** 1:19 28:7,23 |
| **event** 5:11,12 |
| **examination** 4:13 25:25 27:17 28:10,12 |



examined 4:6
**Exhibit** 16:5,24 17:10,14
   19:3 27:6,6
**Exhibits** 27:4,13
**exit** 20:2
**explaining** 17:24

### F

**F** 3:2 28:2
**fact** 5:3 13:12
**factor** 13:2
**fair** 12:23
**familiar** 10:24
**feature** 16:14
**Federal** 1:18
**file** 18:6 24:24,25
**files** 24:17,20
**filing** 3:7
**fill** 17:23
**filled** 17:19
**firm** 5:6
**first** 4:3 15:7 20:25 26:9
**five** 6:22
**five-and-a-half** 6:23
**fixing** 22:25
**floor** 10:19,20 11:24 12:5
   13:8 15:2,5,7,17,17
   16:19 19:7 23:2
**floral** 21:7
**follows** 4:7
**follow-up** 18:16
**force** 3:15
**foregoing** 26:12
**form** 3:21
**forth** 28:11
**Found** 11:15
**four** 15:17 21:19 22:4
**frame** 9:10,12
**full-time** 24:12
**further** 3:20 25:11,21
   26:12 28:14

### G

**G** 2:3 4:2
**garden** 21:6
**general** 18:16 24:6

generally 8:15 10:3
   18:12 23:10,18,23
**give** 4:25 6:22 7:14 20:5
**given** 26:14 28:13
**GNC** 7:11
**go** 4:21 9:2 19:13 20:5
   22:17
**goes** 4:21 18:5
**going** 6:3,5 16:3,22 17:13
   20:19 21:17
**Good** 5:16
**Goods** 4:18,23 5:8 6:20
   6:24 7:17,22 9:4,18
   14:10 18:9,12 19:4
   23:15
**graduate** 6:12
**graduated** 6:11
**guard** 14:4
**guess** 20:14

### H

**H** 27:2
**hand** 28:20
**happened** 11:15 15:25
   17:25
**Hauppauge** 2:8
**hazard** 22:20
**heavy** 8:25
**held** 1:19
**help** 21:7
**hereinbefore** 26:15
   28:11
**hereunto** 28:19
**Herrera** 1:20 28:7,23
**high** 6:10,13,17
**high-traffic** 22:11
**home** 4:16,18,23,25 5:8
   6:20,24 7:17,22 9:4,18
   14:9 18:9,12,13 19:4
   21:6 23:15
**honestly** 10:5 13:10
   25:18
**hope** 5:23
**hours** 10:8
**hurt** 11:8 18:4

### I

**identify** 10:21
**immediately** 22:23
**important** 12:25
**incident** 10:25 11:5,20
   13:5,14 14:18 15:25
   16:12 17:21 18:5 25:8
   25:14
**individual** 12:19
**information** 11:16,17
   18:20 27:20,21
**inspected** 14:16,19
**instructed** 22:18
**interested** 28:17
**internal** 18:8
**involved** 10:25
**issue** 4:20 5:23 6:4
**item** 8:24
**items** 8:25

### J

**J** 4:1,2 5:1 6:1 7:1 8:1 9:1
   10:1 11:1 12:1 13:1
   14:1 15:1 16:1 17:1
   18:1 19:1 20:1 21:1
   22:1 23:1 24:1 25:1
**JANNACE** 2:7
**job** 5:25
**jobs** 9:22,23
**JOE** 1:16
**JOHN** 26:1
**Judge** 3:13
**July** 9:11,24 11:2 24:16

### K

**keep** 6:3 8:11 23:10
   24:23
**key** 13:3
**kind** 7:25 21:8
**know** 4:24 15:24 16:2
   18:9,21,24 19:22 23:19
   24:17 25:18

### L

**L** 3:2,2 4:2 26:6
**label** 20:11

labeled 21:21
**large** 21:2
**larger** 19:19,21
**last-known** 5:14
**law** 5:6
**lawyer's** 5:6
**left** 19:21 20:8,23,25
   21:4
**LEGAL** 1:24
**legs** 15:16,17
**Let's** 6:3
**level** 19:12,15
**levels** 19:10
**lines** 20:13,18
**list** 8:4
**little** 6:10,22 19:23
**LLP** 2:7
**located** 10:17
**location** 9:6,8 10:15,22
   11:19 20:6
**long** 6:6,19 7:3
**longer** 5:8,13
**look** 8:18
**looking** 16:8
**looks** 21:5

### M

**MAGNA** 1:24
**main** 12:18
**maintain** 8:5
**maintenance** 23:8,10,14
   23:22,23
**management** 11:10,18
   13:15 14:17 15:3 17:21
   17:22 18:3,6,8,11,18,22
**manager** 7:7,17,19
**manual** 8:12,14
**map** 19:5 27:11
**March** 1:11 28:20
**mark** 17:14
**marked** 16:4,23,23 17:9
   19:3 27:4
**mark-out** 20:14
**marriage** 28:16
**Mary** 2:9 16:25
**matter** 28:18



**McCoy** 1:3 11:2
**mean** 24:6
**medium** 21:2
**merchandise** 8:16,18
**merchandising** 8:9,15
  13:2 20:16,17
**MICHAEL** 2:3
**middle** 21:25 22:3
**mid-shifts** 24:10
**mistake** 19:24
**moment** 13:18
**months** 9:9
**mops** 23:19
**morning** 23:24 24:3,7
**Morrow** 6:18
**move** 19:20,23,24
**moving** 19:18

**N**

**N** 2:2 3:2 26:6 27:15
**need** 4:23
**never** 6:11
**New** 1:2,21 2:5,5,8 4:4,6
  4:6 5:19,19 28:4,8
**noise** 5:22
**normal** 15:13,14
**normally** 15:2
**Notary** 1:20 4:4 26:24
  28:7
**NUMBER** 27:7

**O**

**O** 3:2 4:2,2 26:6
**oath** 3:12
**objections** 3:21
**occurred** 16:12
**office** 17:8,11 18:13
**Oh** 12:13
**Okay** 4:12 5:15 19:10,23
  21:18 25:19
**old** 24:22
**once** 11:16
**ones** 21:15
**online** 8:13
**open** 19:18 21:25 22:13
**opener** 10:6,7

**opposite** 15:19
**original** 3:9,17
**Originally** 14:25
**outcome** 28:17
**outdoors** 5:20
**outside** 18:10 20:3
**overlap** 24:2
**O'NEILL** 2:3 4:12,14
  5:15 25:19 27:18

**P**

**P** 2:2,2 3:2
**PAGE** 27:17,21
**paged** 11:6,13 13:12 14:3
**part** 18:8,11
**particular** 20:7 22:5
**parties** 3:7 28:15
**part-time** 24:11
**pathway** 12:9,19
**people** 24:10
**percent** 14:6
**person** 23:9,16,22,23
**personal** 9:22
**personnel** 24:24,25
**perspective** 8:21,22
**phone** 17:22 19:17
**PHOTOGRAPH** 27:8,9
**physical** 20:15
**picking** 23:2
**picture** 16:6,25 17:5,6,7
**pinching** 19:17
**place** 26:15
**Plaintiff** 1:4,17 2:4 27:4
**plaintiff's** 16:4,24 17:10
  17:14 19:3
**plan** 10:20 19:7
**platform** 8:24 15:8 16:19
**platforms** 8:19
**please** 4:11
**point** 13:6
**pointing** 20:5
**policies** 8:4
**porter** 23:12
**pose** 22:20
**position** 7:5 15:13,15
**possibly** 20:25

**power** 11:24 12:7,8,12
  12:13 20:20,21
**prefer** 5:4
**prepare** 9:14
**present** 14:13
**presentation** 8:23
**presentations** 8:16
**primary** 23:5
**probably** 10:9 22:3
**procedure** 1:18 18:2
**procedures** 8:4
**process** 18:25
**provide** 5:13
**provided** 14:9 19:4
**Public** 1:20 4:4 26:24
  28:7
**pulled** 14:25
**purged** 24:18
**purposes** 20:16,18
**pursuant** 1:17
**put** 11:17 15:4

**Q**

**question** 14:22,24 20:22
**questions** 25:21

**R**

**R** 2:2 3:2 6:18 7:2,9,10
  26:6 28:2
**random** 22:6
**reach** 4:24
**recall** 11:4,6 13:18,24
  14:12,15 25:8
**receive** 7:21 8:2 22:14
**recognize** 17:4,16
**record** 5:4 24:14 28:12
**red** 20:13,18
**referring** 24:20
**register** 22:7,10,10,11,12
  22:13
**registers** 21:13,20,24
  22:5,8,12
**related** 28:15
**remember** 10:5 13:6,7
  13:10,11,16,19 14:2,3,6
  14:21

**remotely** 1:19
**report** 14:18 17:16 18:6
  18:23 27:10
**REQUESTED** 27:20
**reserve** 4:9
**reserved** 3:22
**respect** 7:22 14:24 22:15
**respective** 3:6
**responsibility** 23:5
**rest** 23:19
**retail** 7:8,11,13
**retain** 25:3
**retained** 27:13
**right** 5:18 19:21,25 20:23
  21:14,16,16
**rights** 4:10
**right-hand** 20:3
**risk** 11:10,18 13:14
  14:17 15:3 17:21,22
  18:3,6,8,11,18,21
**rooms** 23:20
**Rules** 1:18

**S**

**S** 2:2 3:2,2 27:2
**safety** 7:20,21 8:3,5,20
  8:22 22:15 23:6
**sales** 10:19 11:24 12:5
  15:2
**saw** 14:22
**saying** 15:21
**says** 21:2,6
**schedule** 10:4
**schedules** 24:4,22,22
**school** 6:10,13,17
**sealing** 3:7
**second** 20:4
**section** 16:13 20:8,14
**security** 14:4,7,9
**see** 5:24 12:22 13:5 14:20
  16:5,20 22:19
**seeing** 14:21
**seen** 25:16
**send** 16:24
**separated** 15:12
**September** 9:7



service 3:16 5:7,11
SERVICES 1:24
set 28:11,20
sets 21:15
seven 25:4
Seventeen 7:4
shelf 8:25 15:12
shelves 8:18
shift 23:17,18,24 24:3,7,7
shifts 23:21,25
short 6:21
show 16:3,22 17:13 19:2
side 16:15,18 20:3,21
signed 3:10,12,15
SIMMONS 2:7
Simply 14:16
sitting 13:8
situation 23:3
six 6:21 9:8
somebody 11:7,7
sorry 12:8 19:17,24
sort 21:8
SOUTHERN 1:2
speak 11:14 17:21
speaking 13:16 14:14
specific 23:9
specified 26:15
specify 9:12
sporadically 10:18
spot 23:19
SS 28:4
stacked 15:9,22,25
standards 8:3
standing 13:8
start 7:17
started 7:19
state 1:20 4:4 5:18 28:4,8
stated 4:5
STATES 1:2
stepping 6:2
STIPULATED 3:5,20
stool 16:20
stools 11:8 14:21,24 15:6
  15:18 16:10,15 20:23
store 7:11,20 8:12,12 9:4
  10:11,21 12:10,17

13:22,25 14:5 18:5 19:5
  19:9 21:9 22:14 23:4,11
  24:15,24 25:17 27:11
straight 20:5
strip 20:19
subpoena 5:7
Subscribed 26:20
supposed 8:17 22:20,22
sure 8:24,24 10:6 14:8
  24:19
surveillance 10:14
suspect 25:4
sweeps 23:19
sworn 3:10 4:3 26:9,20
  28:11

**T**

T 3:2,2 26:6 27:2 28:2,2
table 16:10,10,14,17 20:7
  21:3,3
take 5:3,15 6:6,22 7:15
  11:16 12:15,25 15:21
  20:6
taken 1:17 17:5,6,7
talking 8:23 9:13
Technically 20:24
tell 15:3
temporarily 21:8
Teresa 1:3 10:25
terms 7:20 8:15 13:2
testified 4:7
testify 26:9
testimony 26:10,14
  28:13
Thank 25:23
theoretically 20:20
thing 5:5
think 6:5 12:6
three 22:4
thrown 10:18
time 1:12 3:22 6:6 9:4,10
  9:12,19 10:4,11 14:5,13
  19:16 24:18 25:13,22
  26:14
title 23:13
TJX 1:8,16 17:15 27:10

today's 9:14
top 15:9 16:10,20 19:12
  19:14
Toys 7:2,8,10
training 7:22,25 22:15
  22:16
transcript 4:11 26:13,13
transferred 9:6
trial 3:22 4:21,22
true 26:13 28:12
truth 26:9
trying 19:16,17,19
two 4:25 15:18 19:10,25
  20:2,9,18 21:15,17 24:4
type 10:13 22:19 24:23
typically 21:25

**U**

U 3:2
understand 5:3
UNITED 1:2
unsigned 3:14
upstairs 21:15
use 22:5,9
usually 14:7

**V**

V 4:2
verbally 17:24
vestibule 20:11
video 10:14,22

**W**

waiting 15:3
waived 3:9
walk 12:10 16:21
wall 20:9
want 4:9 5:2 19:2,20
wasn't 15:13
way 16:16,19 28:17
ways 4:25
went 5:25 11:14 13:13
we'll 5:13 6:4 24:19
we're 8:23 9:10 19:10
WHEREOF 28:19
witness 1:16 3:10,16,18

4:3,10,23 25:25 28:10
  28:13,19
Wi-Fi 5:25
word 12:3,11
words 22:8
work 18:16
www.MagnaLS.com
  1:25

**X**

X 1:3,9 24:18 27:2,15

**Y**

year 6:12
years 6:21,22,23 7:4,12
  7:14 25:4
yellow 21:5
York 1:2,21 2:5,5,8 4:4,6
  4:6 5:19,19 28:4,8

**Z**

Zoom 1:19

**1**

1 1:11 3:17 10:10 16:24
  21:21 24:8 27:8
10:00 1:12
10:30 25:24
100 14:6
10007 2:5
11788 2:8
1992 6:15

**2**

2 17:10 21:21 22:10 27:9
20 26:21
2019 9:11,25 11:2 24:16
2022 1:11 28:20
21-CV-04907 1:6
217 2:4
28 9:11,24 11:2 24:16
28-some-odd 7:14

**3**

3 17:14 21:21 22:10
  27:10
30 3:16



**33** 11:22 16:13 19:15
20:7,7

---

**4**

**4** 19:3 21:21 22:11,12
27:11
**43** 2:8

---

**5**

**5** 10:9 24:7

---

**6**

**6** 27:18
**624-6221** 1:24

---

**7**

**7th** 28:20
**795** 4:5

---

**8**

**866** 1:24

---

**9**

**9** 10:9
**9:00** 10:12
**92** 6:14

