UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Teresa McCoy,<br><br>                Plaintiff,<br><br>    - against -<br><br>The TJX Companies, Inc.,<br><br>                Defendant. | 21 CV 04907 (VEC)(  )<br><br>Plaintiff's Rule 56.1<br>Statement |

      Plaintiff, by her attorney, Michael G. O'Neill, responds to defendant's Rule 56.1 statement as follows:

      1.      Plaintiff's alleged accident occurred on July 28, 2019, at the HomeGoods store located at 795 Columbus Avenue, New York, New York. (**Ex. "A"**, ¶¶ 4-5, **Ex. "G"**, p.18, l.2-23).

      Response

      Not disputed for purposes of this motion.

      2.      Plaintiff claims she was injured while attempting to sit on a pair of stools stacked on top of each other located on the sales floor just beyond the front entrance of the store. (**Ex. "F"**, ¶ 7, **Ex. "G"**, p.35, l.24 – p.36, l.3, **Ex. "I"**, p.11, l.19 – p.12, l.2).

      Response

      Not disputed for purposes of this motion.

      3.      Plaintiff does not know who may have placed the stools on the floor and stacked them on top of each other prior to her accident. (**Ex. "G"**, p.72, l.5-8).

      Response

      Not disputed for purposes of this motion, however the Store Manager's statement to plaintiff that the stools "shouldn't have been there, this shouldn't have been there like that" as

acknowledgement that the stools had been placed in that manner by a store employee. Ex. G, 68:24-25.[1]

4. Plaintiff does not know how long the stools were on the floor in that configuration before her fall. (**Ex. "G",** p.71 1.25 - p.72 1.4).

Response

Not disputed for purposes of this motion, however the statement of the manager referred to in response to the previous paragraph could be understood to mean that the Store Manager was aware of how the stools had been stacked *before* plaintiff's fall.

5. On the date of her alleged accident, plaintiff arrived at the Columbus Avenue HomeGoods around 3:45 p.m. (**Ex. "G"**. p.20 1.20 – P.21, l.4).

Response

Not disputed for purposes of this motion.

6. She was in the store for approximately five to ten minutes before her accident. (**Ex. "G",** p.27, 1.18 – p.28, l.7).

Response

Not disputed for purposes of this motion

7. Due to a pre-existing chronic inflammatory condition of the spine, plaintiff had been utilizing a walker for at least a year. On this day, she was using a two-wheeled walker that was equipped with a seat. (**Ex. "G"**, p.7, l.3-16, p.21 1.5–25, p.22, l.12-18, p.30, l.2-4).

Response

Disputed as incomplete and misleading. Plaintiff testified that she brought the walker with her mainly to use to bring purchases back to her apartment. Ex. G., 22:7-11, 28:17-21.

---

1   References to lettered exhibits are to the exhibits submitted by defendant in support of its motion.

8. Upon entering the HomeGoods with her walker, plaintiff focused her attention on the merchandise stocked on display tables and shelving units in the immediate area to her left. (**Ex. "G"**, p.30, l.2-23).

Response

Not disputed for purposes of this motion

9. After turning to look straight ahead, she noticed a "nice-looking" stool for sale and proceeded two to three feet further into the store. (**Ex. "G"**, p.32, l.2-18).

Response

Not disputed for purposes of this motion

10. The square-shaped, wooden framed stool had a light-colored mesh rope covering and four tapered legs. (**Ex. "G"**, p.33, l.22 – p.33, l.15, p.48, l.22 – p.51, l.14, **Ex. "H"**, **Ex. "K"**, ¶ 6).

Response

Not disputed for purposes of this motion

11. Plaintiff claims the stool was standing upright on the floor approximately six inches in front of a display table with other merchandise. (**Ex. "G"**, p.32, l.19 – p.33, l.13, p.38, l.22 – p.39, l.2, p.51, l.20 – p.52, l.4, **Ex. "H"**).

Response

Not disputed for purposes of this motion

12. The area of the store where the stool was located was well-lit. (**Ex. "G"**, p.37, l.12-14).

Response

Not disputed for purposes of this motion

13. Plaintiff would have had a full view of the entire stool as she approached it straight ahead and specifically recalled seeing a large red car on the floor "a couple inches" away from its legs. (**Ex. "G"**, p.32, l.2-18, p.37, l.25 – p.39, l.2, p.52, l.5-13, **Ex. "H"**).

Response

Disputed. There is no testimony that plaintiff saw the red car before she fell, nor is the conclusion that she "would have had a full view of the entire stool" required from plaintiff's testimony. As such, it is argument of counsel.

14. While standing less than six inches away, plaintiff examined the stool for a minute to a minute and a half. During this time, she even touched the top of the stool to feel the rope covering with her hand. (**Ex. "G"**, p.35, l.6–9, p.45, l.20 - p.46, l.12).

Response

Not disputed for purposes of this motion

15. Although her walker with a built-in seat was next to her and a nearby bench located only a few feet away, plaintiff decided to sit on top of the stool. (**Ex. "G"**, p.35, l.14 – p.36, l.3, p.64, l.11-17).

Response

Disputed as argumentative. Plaintiff testified that she sat on the stool to see if it was comfortable, not because she was tired and wanted to rest. Ex. G., 45:25-46:2.

16. As she sat down, plaintiff felt the stool "sort of just give way" underneath her and topple over, causing her to fall to the ground. (**Ex. "G"**, p.43, l.18 – p.44, l.13, p.47, l.6-10).

Response

Not disputed for purposes of this motion

17. Despite examining the stool for at least a full minute before her accident,

plaintiff claimed that she did not realize it was actually two identical stools stacked on top of each other until after she fell. (**Ex. "G"**, p.35, l.6–9, p.45, l.2 - p.46, l.12).

Response

Not disputed for purposes of this motion

18. Both stools were found to be fully intact with no broken pieces following the accident. (**Ex. "G"**, p.47, l.2-19).

Response

Not disputed for purposes of this motion

19. TJX/HomeGoods' Operation Manager Joe Baglivio was the Merchandise Manager for the Columbus Avenue store on the date of the accident. (**Ex. "I"**, p.9, l.24 – p.10, l.2, **Ex. "K"**, ¶¶ 1-2)

Response

Not disputed for purposes of this motion

20. Mr. Baglivio responded to the scene after the accident. (**Ex. "G",** p.68 l.3-18, p.69, l.25 – p.70, l.11, **Ex. "I"**, p.11, 4-18, p.17, l.13-25, **Ex. "K"**, ¶ 4).

Response

Not disputed for purposes of this motion

21. After speaking with Mr. Baglivio and declining his offer to call an ambulance, plaintiff continued to shop for approximately 30 minutes and ultimately purchased several items before leaving the store that day. (**Ex. "G",** p.60, l.11-17, p.69, l.13-19, p.71, l.9-17, p.73, l.12 – p.75, l.23).

Response

Not disputed for purposes of this motion

22.     Per TJX/HomeGoods' customary practice and procedure, the stools involved in plaintiff's accident are only to be displayed individually with all four legs on a display platform or, alternatively, on its side if placed on a display table. (**Ex. "I"**, p.15, l.14-23, p.16, l.3-21, **Ex. "H"**, **Ex. "K"**, ¶ 6, **Ex. "L"**, ¶¶ 6-7).

Response

Disputed.  There are inconsistencies in Baglivio's deposition testimony and his affidavit. In his deposition, he stated that the normal position for the stools would be *on the floor*.  Ex. I., 15:16-17.  When shown Exhibit H, he stated that the stools could be displayed on their sides on a table.  Id., 16:15-19.  In his affidavit, he states that "Stools were displayed on platforms five to sit inches off the ground and not directly on the sales floor." Ex. K, ¶6.  There is no platform visible in Exhibit H.  Based on Baglivio's deposition testimony, the stools on the floor would have been in their "normal position."

23.     Plaintiff did not see any TJX/HomeGoods' employees actively stocking merchandise in the area before or after her accident. (**Ex. "G",** p.66, l.24 – p.67, l.16).

Response

Not disputed for purposes of this motion

24.     All TJX/HomeGoods' employees receive training on policies and procedures to maintain the safety of customers and employees. This includes ensuring merchandise is properly displayed and returned to the appropriate platform, shelf or table if found to be out of place. (**Ex. "I"**, p.7, l.20 – p.9, l.2, p.22, l.14 – p.23, l.3).

Response

Not disputed for purposes of this motion

25.     Employees routinely perform safety sweeps throughout the day to ensure all

merchandise is being displayed in accordance with TJX/HomeGoods' policies and procedures. In addition, each area of the store is inspected by an assigned supervisor during, and at the end, of their shift. (**Ex. "J"**, p.12, l.3 – p.19, l.22).

Response

Disputed. Defendant's 30-b-6 witness, Jamie Penna, gave extremely confusing testimony about safety sweeps. Ex. J., 12:3-14:5. Penna testified that safety sweeps are conducted "as needed." Ex. J., 13:11-12. When asked how store personnel would know if needed, she testified that it would depend on the "condition of the floor." Ex. J, 13:15-16. It is, however, the purpose of a safety sweep to determine the condition of the floor. Id., 13:19-22.

Penna admitted that there is no set schedule for safety sweeps and no record is made of them. Ex. J., 12:15-19; 15:13-15. Hence, there is no record to indicate that a safety sweep was done on the day of the incident where the incident took place.

26. If an employee observed stools stacked on top of each other on the sales floor in the manner described by plaintiff, they would have been immediately returned to their correct display positions as per their training. (**Ex. "I"**, p.22, l.18 – p.23, l.3).

Response

Disputed. This is not a fact, it is speculation, argument of counsel.

27. As part of his regular duties on the date of the accident, Mr. Baglivio walked throughout the store every 30 to 40 minutes looking for potentially hazardous conditions. (**Ex. "K"**, ¶ 7).

Response

Plaintiff has no way of knowing whether this is true or not, but it is a self serving statement of an interested witness and has no evidentiary value.

28. During his last inspection of the area where plaintiff fell which occurred approximately 40 minutes prior to the accident, Mr. Baglivio did not observe two stools stacked on top of each other on the sales floor. If he had observed such a condition, he would have addressed it immediately. (**Ex. "K"**, ¶¶ 8-9).

Response

Plaintiff has no way of knowing whether this is true or not, but it is a self serving statement of an interested witness and has no evidentiary value. In addition, Baglivio made no mention of this "fact" in either his deposition or the incident report he created on the day of the incident. Exhibit 1.[2] It strains credibility that Baglivio could recall nearly to the minute his last "inspection" of a discrete area of a store on a specific date more than 3 years ago. This is especially so given the fact that Baglivio could not recall the name of the security guard on duty who was present at the time of the incident. How likely is it that Baglivio would remember the last time he walked by a particular area of a store on a particular date, but not remember a person involved in the incident?

29. Arturo Cepeda was a Sales Associate on duty at the time of plaintiff's accident. (**Ex. "L"**, ¶¶ 1, 4).

Response

Plaintiff has no way of knowing whether this is true or not, because defendant refused to identify individuals who performed safety sweeps on the day of the incident, asserting that such facts were irrelevant. Exhibit 2., ¶1. Mr. Cepeda was not identified as an individual who performed safety sweeps.

30. As part of his regular job duties, Mr. Cepeda would constantly patrol the sales

---

[2] Numbered exhibits are annexed to the declaration of Michael O'Neill, submitted in opposition to defendant's motion.

floor to ensure all merchandise is properly displayed. (**Ex. "L", ¶ 8**).

Response

Disputed. Defendant's Rule 30(b)(6) witness testified that the so-called safety sweeps are performed by associates whose job it is to return merchandise to "where it belongs." Ex. J, 12:8-14. As noted above, these safety sweeps are done on an "as needed" basis. Cepeda's declaration is inconsistent with the testimony of defendant's Rule 30(b)(6) witness and therefore should be ignored by the Court.

31. During his last inspection of the area where plaintiff fell which occurred approximately 15-20 minutes prior to the accident, Mr. Cepeda did not observe two stools stacked on top of each other on the sales floor. If he had observed such a condition, he would have addressed it immediately. (**Ex. "L", ¶¶ 8-9**).

Response

Disputed. It is inconceivable that Cepeda could recall nearly to the minute his last "inspection" of a discrete area of a store on a specific date more than 3 years ago.

32. There were no prior complaints about the stools or the manner in which they were displayed. (**Ex. "G"**. p.72, 1.9-13, **Ex. "K", ¶ 10, Ex. "L", ¶ 10**).

Response

Plaintiff has no way of knowing whether this is true or not.

33. There were no prior similar accidents. (**Ex. "G"**. p.72, 1.14-17, **Ex. "K", ¶ 11, Ex. "L", ¶ 11**).

Response

Plaintiff has no way of knowing whether this is true or not.

## Additional Facts In Opposition to Defendant's Motion for Summary Judgment

34. When plaintiff fell, there was a security guard standing in the immediate area where she fell. Ex. G, 40:12.

35. The security guard was in a position to see the area where the stools in question were located and where plaintiff fell. Id., 41:8.

36. Plaintiff estimates that the security guard was six to eight feet from where she fell. Id., 41:2-3.

37. In discovery, plaintiff requested the identity of the security guard on duty. Ex. 3, ¶1.

38. Defendant responded by stating "the defendant does not have in its possession sufficient information to provide a response." Id.

39. Plaintiff then served a Rule 30(b)(6) deposition notice seeking, among other things, someone who could testify regarding the staffing of security guards and the records relating to the same. Ex. 4, ¶¶6, 7.

40. Defendant initially produced Jamie Penna as its Rule 30(b)(6) witness. Ms. Pena did nothing to prepare for her deposition and could not testify with respect to security guards. She did, however, confirm that the security guards are employed by defendant and that defendant would have records showing who worked on the day plaintiff fell. Ex. J, 7:18-8:7, 28:5-31:14.

41. Defendant's initial response to plaintiff's interrogatory (Ex. 3) that "the defendant does not have in its possession sufficient information to provide a response" was simply false.

42. Defendant then produced Julio Cuba as its 30(b)(6) witness for the purpose of testifying about the security guards. Like Ms. Penna, Mr. Cuba did nothing to prepare for his deposition. While he could state that one of two individuals would have been on duty the day of the incident, he could not say which and did not have contact information for them. Exhibit 3, 9:21-23, 21:1-21. Like Ms. Penna, he confirmed that the defendant would have their contact information. Id.

43. After Cuba's deposition, counsel for plaintiff repeatedly requested counsel for defendant to provide the contact information for the two individuals identified by Mr. Cuba. Exhibit 4. Mr. Cuba was deposed on June 2, 2022 and defendant did not provide contact information for the two individuals until July 7, 2022. Exhibit 4. Discovery closed June 13, 2022. Docket entry 25.

44. In discovery, plaintiff requested copies of any videos of the area where plaintiff fell and a plan showing the location of video cameras in the Store. Ex. 5, ¶¶1, 11. Defendant responded by stating it had no such videos and no plan showing the location of video cameras in the Store.

45. Plaintiff's Rule 30(b)(6) notice requested a witness who could testify to the location of video cameras in the Store and the availability of videos from those cameras. Exhibit 6, ¶¶1-2.

46. Ms. Penna could not testify with respect to cameras. Ex. J, 11:15-16.

47. Mr. Cuba testified that there are about 30 cameras in the Store but could not testify with any certainty where they were located. He had not been requested to determine the location of cameras for purposes of the deposition. Exhibit 3, 32:22-25

48. Mr. Cuba testified that store personnel should have searched for and preserved a

video of the location of the incident. Id., 18:17-25. There is no record showing whether such a search was made in this case. Id., 20:12-16.

49. Mr. Cuba testified that videos are preserved for about 90 days. Id., 15:5-9.

50. Defendant was on notice that plaintiff was represented by counsel and making a claim for injuries as early as August, 2019. O'Neill Dec., ¶¶8-9, Exhibit 7.

51. There was a video camera located near the entrance of the Store on the day of the incident that covers the location of plaintiff's fall which would have recorded the incident. Connor Dec., ¶¶1-3, plaintiff Dec., ¶¶2-4.

Dated: New York, New York
   September 19, 2022

                MICHAEL G. O'NEILL

                _____
                Attorneys for Plaintiff
                217 Broadway, Suite 306
                New York, New York 10007
                (212) 581-0990